## THE STATE OF NEVADA, RESPONDENT, v. JOHN BERRYMAN, APPELLANT.

GRAND LARCENY OF ORE—SUFFICIENCY OF INDICTMENT. Where it was objected to an indictment for grand larceny of certain "silver bearing ore" that the property alleged to have been stolen savored of the realty: *Held*, that as "ore" in its usual acceptation meant something severed from the realty, there was a sufficient statement of facts in the indictment showing it to be personal property.

LARCENY OF ARTICLES SEVERED FROM FREEHOLD. The taking and carrying away of articles, which formed a part of the freehold, will not constitute a larceny unless an interval of time has elapsed between the acts of severance and asportation; but it seems only such an interval is necessary as that the two acts shall not constitute one transaction.

State v. Berryman.

WORDS "SILVER BEARING ORE" IMPLY SEVERANCE FROM FREEHOLD. The words "silver bearing ore," as used in an indictment charging grand larceny of it, mean a portion of vein matter, which has been extracted and separated from the mass of waste rock and earth, and imply severance from the freehold.

IRRELEVANT TESTIMONY—NO REVERSAL WHERE NO PREJUDICE. Irrelevant testimony should be excluded, but its admission will not vitiate a judgment of conviction if it appears that it could not have prejudiced the defendant.

APPEAL from the District Court of the Sixth Judicial District, Lander County.

The defendant John Berryman, having been indicted jointly with Joseph Oxford for the crime of grand larceny and having on a separate trial been convicted as charged, was sentenced to the State prison for the term of one year. Oxford had previously been tried, convicted and sentenced to the same term. The defendant Berryman moved in arrest of judgment and also for a new trial, both of which motions were denied. He then appealed from the judgment.

It appeared from the testimony that the ore alleged to have been stolen was found concealed in the cabin of the defendants. It was a peculiar kind of ore and had evidently been taken from the mine of the Manhattan Company at a place where defendants had been employed to work for the company. When discovered, and while the ore was being removed from the cabin, Oxford stated that he and Berryman had bought it from one John Bone at the same time that they purchased the cabin from him. Testimony of this statement of Oxford was admitted on the trial of Berryman against his objections that it was made in his absence and was irrelevant as to him. But it further appeared in evidence that Berryman, upon his preliminary examination, had himself volunteered as a witness on his own behalf and had himself made the same statement. Further evidence showed that Bone never sold them any ore, and that it was not in the cabin when they purchased.

Among the instructions given were the following, asked by plaintiff:

"If the jury believe that the defendant in this case took the ore in question from the Black Ledge Mine named in the indictment in small quantities and at different times, but that such taking was continuous and systematic, and that the object of defendant was to take a quantity of greater value than fifty dollars, and that be removed a little at a time only to escape detection to a place of concealment near the mine to be thence removed at his convenience, and that he did take away feloniously more than fifty dollars' worth of ore, this would be grand larceny and not a series of petit larcenies."

" The jury are instructed that in order to make the felonious taking of ore from a mine, it is not necessary that any particular length of time should elapse between the severance and the carrying away; and if they should believe that the defendant severed the ore from the mine, then laid it aside, and afterwards feloniously carried it away from the mine, the taking constituted the crime of larceny."

Among the instructions asked by defendant and given were the following :

"If the jury find that the ore alleged to have been taken by defendant was a part of the Black Ledge and that the same belonged to and savored of the realty, and there is no proof to convince the jury that any time intervened between the taking of the rock from the ledge and the removal from the shaft, then there is no larceny but one continuous act which constitutes only a trespass."

"If the jury find from the evidence that the defendant severed the rock from the ledge and carried it away immediately after the severance, making one continuous act, then there is no larceny."

*George W. Baker* and *W. H. Davenport*, for Appellant.

I. There was error in the admission in evidence of the statement of Joseph Oxford in regard to the possession of the rock alleged to have been stolen, as against this defendant, made when this defendant was not present—there

having been no evidence previously offered tending to estab-
lish a conspiracy between defendant Berryman and Joseph
Oxford to commit a crime. 1 Greenl. on Ev. Sec. 111.
Aside from the fact that defendant and Oxford worked in
the same mine together, there was no evidence in any stage
of the proceedings tending in the slightest degree to estab-
lish a conspiracy sufficient to warrant the admission of the
testimony in question.

II.    There was error in overruling defendant's motion in
arrest of judgment. The indictment is not sufficient.  In
order to constitute the crime of larceny there must be the
felonious taking and carrying away of the *personal* goods of
another. 4 Black. Com. 230; 4 Stevens' Com. 152. Mr.
Russell defines the crime to be the wrongful and fraudulent
taking and carrying away of the *mere personal goods* of
another from any place with the intent to convert them to
the taker's use.    Thus it will be seen that an indispensable
prerequisite to constitute the crime is that the property
alleged to have been stolen be *personal property,* which alone
is the subject of larceny. 2 Russ. on Crimes, 62.  In the
indictment here the property alleged to have been stolen not
only savors of the realty, but it is not even alleged to be
personal property.   For anything that appears on the face
of the instrument the ore might have been severed from the
ground at the time of the taking charged, so that they to-
gether might have constituted but one continuous transac-
tion, in which case *simple trespass* and not larceny was com-
mitted. *State* v. *Williams,* 35 Cal. 672; 2 Archbold's Crim.
Prac. 377, 378; 2 Russ. on Crimes, 86.

III.    It is just as reasonable to presume that the ore
charged in the indictment was severed and carried away at
the same time so as to constitute only a trespass, as that
larceny was committed; and as upon the first no offense
would be charged, it follows that the indictment is fatally
defective for want of that directness and certainty required
by our Criminal Practice Act. *State* v. *Williams,* 35 Cal.
672.

18

*Geo. S. Hupp*, for Respondent.

I.   When a thief first severs, and afterwards steals, there may be a question what interval of time must elapse between the two acts in order for the stealing to amount to larceny.   There seems to have been an opinion that the time intervening must at least amount to a day, because in law a day is not divisible.   The better doctrine however is, that no particular space is necessary, only the two acts must be so separated by time as not to constitute one transaction. 2 Bishop C. L. § 679.   In this case it was a question of fact for the jury to determine upon all the testimony whether there was any interval of time between the severance and the asportation of this ore from the mine.   It was fully discussed before the jury; they passed upon it and found adversely to the defendant.   One of two hypotheses is undoubtedly true.   Berryman commenced digging the quartz from the mine when he went down in the morning, throwing it aside as it was extracted, and after the day's labor was closed picked it up and carried it away; or just before he left the mine he severed the quartz from its native bed, and without releasing his possession of it for a moment immediately carried it to his cabin.   Upon the former hypothesis he was guilty of a theft—upon the latter, he committed only a trespass.

Upon a careful consideration of all the testimony the jury doubtless concluded that the first hypothesis was the true one and found accordingly.

II.   What possible influence could the declaration of Oxford have produced upon the minds of the jury in the trial of Berryman?   None at all.   But it further appears that Berryman offered himself as a witness on his own behalf upon the preliminary examination before the justice, and then and there, of his own free will, testified under oath that he bought the ore from John Bone; and in the same connection afterwards stated, in reply to a question from his own counsel, that the ore was in the Bone cabin when he went into possession of it.   An appellate court will never

State *v.* Berryman.

disturb a verdict because improper testimony has been admitted where it is obvious that such testimony had no effect upon the deliberations of the jury; where the result would have been the same without such testimony; where the other evidence taken altogether fully justifies the verdict and where upon the whole case it is manifest that complete justice has been done to both the defendant and the State.

III.   It is contended that the indictment in this case is fatally defective upon the ground that it does not state facts sufficient to constitute a public offense, for the reason that there is no allegation that the ore was personal property. The statute requires that words used in an indictment shall be construed in their usual acceptance in common language, except such words or phrases as are defined by law.   Crim. Prac. Act, Sec. 241.   *People* v. *Littlefield,* 5 Cal. 355.

Now what is the meaning of the word "ore" in its ordinary and general acceptation?   We speak of ore in a sack, in a box, in a wagon, at the ore-house, on the dump, at the mill; and when we speak of "six hundred and ten pounds of ore," the only reasonable construction of the language is, that we are referring to the ore after its severance from the freehold.   Otherwise, in charging the larceny of six hundred and ten pounds or bushels of apples or potatoes, would it not be necessary to go further and allege that at the time they were taken they had been plucked from the trees or dug out of the ground?   It is plain that the words "six hundred and ten pounds" fairly imply that the ore had been extracted from its native bed and *weighed;* and it is plain that the indictment clearly and distinctly set forth the offense in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what was intended.   See also Webster's Dictionary, word "ore."

By the Court, HAWLEY, J.:

Appellant, having been convicted of grand larceny, moved to arrest the judgment upon the ground that the indictment

did not state facts sufficient to constitute a public offense. The court refused the motion and appellant thereupon appeals from the judgment.

The indictment charges "that said defendants Joseph Oxford and James Berryman, on the thirtieth day of July, A. D. 1872,    *    *    at the County of Lander in the State of Nevada,    *    *    six hundred and ten pounds of silver-bearing ore, of the value of eight hundred dollars, of the property of the Manhattan Silver Mining Company of Nevada, a corporation duly organized and existing,    *    *    did feloniously    *    *    steal, take, and carry away.    *    *    *"

It is claimed that the property alleged to have been stolen savors of the realty, and that there is no sufficient statement of facts in the indictment showing it to be personal property. The rule that things savoring of the realty are not the subject of larceny is stated by Sir Matthew Hale as follows: "If a man cut and carry away corn at the same time it is trespass only, and not felony, because it is but one act; but if he cut it and lay it by and carry it away afterwards it is felony." *Emmerson* v. *Annison*, 1 Mod. 89. The reasons given by Blackstone (4 vol. p. 232) for this distinction is that "Lands, tenements and hereditaments (either corporeal or incorporeal) can not, in their nature, be taken and carried away. And of things, likewise, that adhere to the freehold, as corn, grass, trees and the like, or lead upon a house, no larceny could be committed by the rules of the common law; but the severance of them was, and in many things is still, merely a trespass which depended on a subtility in the legal notions of our ancestors. These things were parcel of the real estate, and therefore, while they continued so, could not by any possibility be the subject of theft, being absolutely fixed and immovable. And if they were severed by violence, so as to be changed into movables, and at the same time, by one and the same continued act, carried off by the person who severed them, they could never be said to be taken from the proprietor, in this their newly acquired state of mobility (which is essential to the nature of larceny), being never, as such, in the actual or

constructive possession of any one but of him who com-
mitted the trespass.    He could not, in strictness, be said to
have taken what at that time were the personal goods of
another, since the very act of taking was what turned them
into personal goods.    But if the thief severs them at *one*
time, whereby the trespass is completed, and they are con-
verted into  personal chattels in the constructive possession
of him on whose soil they are left or laid, and comes again
at another time when they are so turned into personalty,
and takes them away, it is larceny; and so it is if the owner
or any one else has severed them."

The rule containing this subtle and unsatisfactory dis-
tinction is sustained by all the authorities.    2 Bishop on Cr.
L. Sections 779, 780, 781,  782, and authorities there cited.
There is some *conflict in the authorities as to what interval
of time must elapse between the acts of severance and aspor-
tation.*    The doctrine seems now to be settled, as laid down
in Bishop, that no particular space is necessary, only the
two acts must be so separated by time as not to constitute one
transaction.

There is no substantial reason why the thief who, with
felonious intent, takes and carries away apples from a tree,
lead pipe from a building, or quartz rock containing precious
metals from a mine, etc., etc., at one time, should not be
punished the same as the thief who first severs the things
from the freehold and afterwards goes back and carries
them away.    It is the criminal intention that constitutes the
offense, and this intention is the only criterion by which to
distinguish a larceny from a trespass.    In our judgment the
more sensible rule would be that as soon as the things which
savor of realty are severed from the freehold, they become
*eo instante* the personal property of the owner, the felonious
taking and carrying away of which would constitute larceny.

So far as the present case is concerned, it is unnecessary
to depart from the beaten path of precedent which the
authorites have (as we think without substantial reason)
established.    In *The People* v. *Williams*, 35 Cal. 673, cited
and relied upon by appellant, the indictment was for taking

and carrying away "from the mining claim of the Brush Creek Gold and Silver Mining Company  *  *  fifty-two pounds of gold bearing quartz rock." The court said that the indictment was " entirely silent as to whether the rock was a part of a ledge and was broken off and immediately carried away by the defendant, or whether, finding it already severed, he afterwards removed it." The court held that the indictment was therefore capable of a double interpretation and for this uncertainty it was set aside. Larceny is the felonious taking and carrying away the personal goods or chattels of another, and if the facts stated in the indictment do not show that the *ore* was personal property at the time of the commission of the offense, the indictment can not be sustained. The character of the property, whether real or personal, must be determined by the statement of facts set out in the indictment. Sec. 241 of the Criminal Practice Act provides that " the words used in an indictment shall be construed in the usual acceptance in common language, except such words and phrases as are defined by law, which are to be construed according to their legal meaning." The word *ore* is not defined by law, and must therefore be construed in its usual acceptation. The words " silver bearing ore," as used in the indictment, have reference to a portion of vein matter which has been extracted from a lode and assorted, separated from the mass of waste rock and earth and thrown aside for milling or smelting purposes, or taken away from the ledge. Webster gives the following definition: " Ore (mining). The ore of a metal with the stone in which it occurs, after it has been picked over to throw out what is quite worthless." In our judgment, the language used in the indictment necessarily implies that the ore had been severed from the freehold prior to the time of its asportation by Oxford and Berryman. We think that the act charged is stated with sufficient certainty to enable the court to pronounce judgment according to the right of the case, and that is all the statute, in this respect, requires. Crim. Prac. Act, 461, Sec. 243.

From the testimony elicited at the trial, it appears that Oxford and appellant while engaged at work upon the Black Ledge owned by the corporation had (in small quantities and at different times) feloniously carried away therefrom the "six hundred and ten pounds of silver bearing ore." The question whether the acts of severance and of asportation were so separated by time as not to constitute one transaction was, under proper instructions, fairly submitted to the jury.

The court did not err in overruling appellant's motion in arrest of judgment. Appellant asks a reversal of the case upon the ground that the court erred in admitting the statement of Joseph Oxford, made after the commission of the offense, to the effect that the ore in question was bought from one John Bone at the same time that the cabin in which Oxford and appellant lived, and in which the ore was found, was purchased. This testimony was irrelevant and should have been excluded. 1 Green. on Ev. Sec. 111; The State v. Ah Tom, ante 213. But it is evident that appellant was not prejudiced by its admission. In fact the record shows that during his preliminary examination Berryman made substantially the same statement, which was properly admitted in evidence.

The judgment of the district court is affirmed.