EDWARD KELLY, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 3265

April 7, 1939.                    89 P. (2d) 1.

*M. B. Moore* and *John W. Burrows,* for Appellant:

*Gray Mashburn,* Attorney-General; *W. T. Mathews and Alan Bible,* Deputy Attorneys-General; *Ernest S. Brown,* District Attorney; and *Nash P. Morgan,* Assistant District Attorney, for Respondent:

# OPINION

By the Court, ORR, J.:

The appellant in this action was convicted of the crime of obtaining money under false pretense and false representations from one Elmo Zunino. From the

judgment of conviction, order overruling motion for new trial and an order denying a motion in arrest of judgment, the defendant has appealed.

The evidence discloses that the complaining witness, Elmo Zunino, and one Robert E. Hunt were engaged in conducting a grocery business in the city of Reno, State of Nevada. Appellant had certain negotiations with one of the partners, Hunt, relative to purchasing an interest in a patent which the appellant represented he had secured on a radio attachment which would eliminate static in radio reception and would permit the receiving of programs from foreign countries at any hour of the day without the accompaniment of static or other noise. Appellant entered into an agreement with the said Hunt for the purchase of a twenty percent interest therein. While negotiations with the said Hunt were benig carried on, appellant mentioned the subject to Zunino, and at the invitation of appellant, Zunino accompanied him to the back room of the store known as the Z and H Market, where appellant then and there purported to give a demonstration of the workability of his alleged invention. During the course of the conversation had at that time, appellant informed Zunino that he had a patent on the attachment, and suggested to Zunino that he get a two percent interest in it from Hunt. Later Zunino contacted Hunt, and subsequently informed the appellant that his partner was unwilling to part with a two percent interest. Appellant then informed Zunino that he would give him a two percent interest. Thereafter, beginning with the 25th of July 1938, and continuing until the 1st day of September 1938, appellant received from Zunino numerous small sums of money, aggregating in the whole the sum of seventy-five dollars. The money was received upon the representation that it was to be used to purchase radio tubes and chemicals to manufacture a certain gas needed in the operation of the radio attachment. Appellant further represented to Zunino that he was at the time negotiating with the Philco people for the sale of his

patent; that three representatives of said company were at the Riverside Hotel in Reno; and that the deal would be closed any day. According to the testimony of Zunino, it was the representations of appellant that he possessed a patent and had completed arrangements for its sale which induced him, Zunino, to give appellant the money. Appellant admitted at the trial that he had no patent, and we find that the evidence establishes the representations as to negotiations for a sale to the Philco people to have been false.

Counsel for the appellant have made numerous assignments of error. We will consider the assignments presented in the briefs and orally argued, but not in the same order.

First: does the information state a public offense? This question was raised in the motion for an arrest of judgment, and inasmuch as it relates to the jurisdiction of the court we deem it advisable to dispose of it first. Counsel for appellant argue that because the information fails to state that the money alleged to have been received was the money of Zunino, it is fatally defective. The charging part of the information is as follows: "That the defendant did wilfully and unlawfully obtain from Elmo Zunino * * * the sum of seventy-five dollars, lawful money of the United States of America, by means of and by use of false representation and false pretense, with intent to cheat and defraud the said Elmo Zunino."

Section 10865 N. C. L. 1929 sets out what shall constitute a sufficient description of the offense of obtaining money under false pretense or false representation. The pleader in drawing the information in this case followed the exact language of the statute, with the exception that he failed to incorporate therein the words *"his money."* As we understand the contention of appellant, a person could not be guilty of the crime of obtaining money under false pretense or false representation unless the money received was owned by the person defrauded. Certainly such would be the result if the

information must contain an allegation of ownership in the defrauded person. We cannot subscribe to any such restricted interpretation. Section 10391 N. C. L. 1929, which defines the crime, makes no such restriction; it is made a crime to obtain by false pretense or pretenses from *"any other person."* The information should not be required to allege more elements in charging a crime than the statute defining the crime requires. Lawful possession is all that is necessary.

"Actual ownership of the money or goods by the person upon whom the fraud is perpetrated is not essential. It is sufficient if he had lawful possession and dominion of the same." 25 C. J. p. 607.

■■ Appellant makes the further contention that because the defendant received from Zunino small sums of money over a period of several days, none of which was in the sum of fifty dollars, he could not be convicted of a felony, and should have been charged with a series of misdemeanors; that each sum obtained was a distinct crime in itself, and could not be consolidated so as to constitute a sum in excess of fifty dollars. This is true where each of the crimes is separate and distinct, but an exception obtains where the receipt of the money is obtained pursuant to one design, one purpose, one impulse, or under such circumstances as to constitute a single act without regard to time. In adopting this conclusion as to the crime charged, we have not been furnished with, nor have we found, authority dealing with the crime of obtaining money under false pretenses where the precise question is decided. Such is the rule adopted relative to the crime of larceny, and the reasoning employed in the one is most persuasive in the other. In larceny, different asportations prompted by one design, one purpose, one impulse, are a single act without regard to time. State v. Berryman, 8 Nev. 262; State v. Mandich, 24 Nev. 336, 54 P. 516; Brown v. State, 18 Ohio St. 496; State v. Wise, 186 Mo. 42, 84 S. W. 954; People v. Mills B. Sing, 42 Cal. App. 385, 183 P. 865; People v. Bratton, 125 Cal. App. 337, 14

P. (2d) 125; Ex Parte Jones, 46 Mont. 122, 126 P. 929. And in obtaining money under false pretenses, the different receipts of money prompted by one design, one purpose, one impulse, are a single act without regard to time. The acts may be looked upon as one transaction and constituent and component parts of the same cheat and fraud. We have read the cases of People v. Hatch, 13 Cal. App. 521, 109 P. 1097, 1100, and Edelhoff v. State, 5 Wyo. 19, 36 P. 627, 631, cited by appellant, but to our minds they present different situations than exists in this case. In the first, each loan was a separate transaction, and in the second the rent was collected in monthly installments and each payment converted to the use of the agent as he collected it—each a single and distinct act without the element, as exists here, of a single design, purpose, or impulse.

What was the purpose and intent of appellant in this case? The evidence discloses the intention of the appellant to get from Zunino as much money as possible under the false and fraudulent representation that he had a patent on a radio fixture and was about to dispose of it. This was the inducement to Zunino to part with his money, in each instance. The same false scheme actuated Zunino to part with his money each time. Appellant did not receive the money under the representation that he was attempting to perfect a patent, but that he needed the money in order to obtain tubes and purchase chemicals in order to demonstrate a patent already obtained and which he was about to sell—one and the same false pretense or false representation of an existing fact, of something having great value. The promise to give Zunino a two percent interest is but one of the false promises made; and though it deals with something to be done in the future, the other representations come within the rule that the representations must relate to a prior or existing fact. Appellant made representations to Robert E. Hunt, the partner of Zunino, as to his ownership of a patent. This

evidence corroborated the existence of a scheme and design in the mind of appellant to cheat and defraud. The circumstances of this case bring it well within the exception, and appellant was properly charged with obtaining the aggregate amount, namely, seventy-five dollars.

■ Another contention made is that the verdict of the jury is void in that no judgment could be rendered thereon because the jury did not find the degree of the crime, the jury having found the defendant guilty as charged. The contention of counsel being that inasmuch as the defendant could have been convicted of a misdemeanor, the jury should have designated the degree of the crime. This point is completely answered by the determination that the acts constitute one crime. He was charged with obtaining seventy-five dollars, a felony. The jury were properly instructed that they could find the defendant guilty of a misdemeanor under the information, on the theory that the lesser crime was contained within the greater. But their verdict was for the greater.

■ The summary of the evidence given in this opinion and the effect we ascribe to the representations made convince us that it is ample to justify the jury in finding as they did.

■ An instruction was requested by defendant, which defined a patent. This was properly refused by the court. An involved definition as to what constitutes a patent could only have the effect of confusing the jury. The word has a certain well-defined meaning among laymen, and connotes a thing of value. Such was the understanding intended to be imparted by the appellant, and, we conclude, such was the understanding that Zunino had.

An attempt was made to persuade this court to overrule the case of State v. Moran, 43 Nev. 150, 182 P. 927. In disposing of this question we will content ourselves with stating that we are satisfied with the conclusion

reached in that case, also the reasoning upon which such conclusion is based, and refuse to disturb it.

■ Complaint is made that the trial court refused to permit the defendant to make a demonstration of his alleged attachment unless the district attorney were given the right to cross-examine with reference to it; counsel's position being that the appellant should have been permitted to place the attachment on the radio, and if it worked that was all that was necessary. We cannot subscribe to that view. If such a privilege were allowed the appellant, there would have been no way to determine whether or not he was using some attachment already in existence, rather than a new principle being involved, or a combination of old and new principles. This is particularly true in view of the evidence of experts who testified that there were and are on the market attachments which will reduce static. Counsel urges that to permit the cross-examination would of necessity disclose certain secrets which the appellant possessed. A reading of the whole record convinces us that the jury were justified in finding he had none of value; but conceding that he did, such would not be a sufficient reason to deprive the state of a valuable right afforded by the law. The ruling was correct. The learned trial judge was very careful to safeguard every right of the defendant, and every latitude consistent with the proper application of the rules of evidence was allowed.

Our finding as to the charge constituting but one crime disposes of the assignment of error as to the trial court's refusal to instruct the jury that each sum of money obtained was a distinct offense.

■ It is urged that the court erred in permitting the expert testimony, for the reason that the said experts were not familiar with patent law and procedure. The question of what constitutes a patent was not within the field of the relevancy, competency, or materiality of their testimony. Their testimony was for the purpose of enlightening the jury as to whether the attachment

which appellant had in his possession had merit, and to assist them in determining the good or bad faith of appellant. He was not prejudiced thereby.

The judgment and orders appealed from are affirmed.