THE STATE OF NEVADA, Appellant, *v.* CLAUDE
L. WOMACK, Respondent.

No. 3633

March 19, 1951.                      229 P.2d 149.

*W. T. Mathews,* Attorney General, *George P. Annand,
Robert L. McDonald, Thomas A. Foley,* Deputy Attorneys General, of Carson City, and *Kenneth L. Mann,*
and *A. L. Puccinelli,* of Elko, for Appellant.

*George F. Wright,* of Elko, for Respondent.

## OPINION

By the Court, MERRILL, J.:

This is an appeal by the state from an order of the trial court sustaining a demurrer to an indictment found against respondent. The demurrer was sustained upon the ground of misjoinder of unrelated offenses and the sole question presented by the appeal is whether the indictment charges more than one offense.

Respondent is constable of the township of Mountain City, Elko County, having served as such since April 1, 1944. On June 29, 1950, an indictment was found against him by the Elko County grand jury charging him with the gross misdemeanor of misconduct in office. The indictment charges: "* * * that the said Claude L. Womack, on or about the month of August, 1949, did place under arrest in the said Township of Mountain City, County of Elko, State of Nevada, one Ida Whiterock, and did place the said Ida Whiterock in the jail in said Township; that thereafter, the said defendant did ask and receive from the said Ida Whiterock the sum of Twenty-five Dollars, lawful money of the United States of America, upon the express promise and consideration of the said defendant that he would release the said Ida Whiterock from jail, and that he would not take the said person before any magistrate in any County in the State of Nevada; that upon the promise to pay the said sum of Twenty-five Dollars, the said Ida Whiterock was released from the said jail, and was not taken before any magistrate whatsoever, and that the

said Ida Whiterock thereafter paid the sum of Twenty-five Dollars to the defendant at Owyhee, Elko County, Nevada, thereby obstructing the due execution of justice, and in violation of the trust reposed in him, the said defendant."

Then follow further charges, substantially similar to the one quoted, asserting that respondent had on other occasions acted in like manner with other persons. In all, 14 separate transactions of this character are asserted, each statement concluding in the same manner: "thereby obstructing the due execution of justice, and in violation of the trust reposed in him, the said defendant."

A demurrer to this indictment upon five grounds was filed by respondent. Subsequently the trial court entered its order sustaining the demurrer upon two grounds, the second (with which this opinion is concerned) being: "That more than one offense is charged and said offenses charged do not relate to the same account, transaction or event but are charges of offenses occurring at different distinct times and places."

The order further provides that since the objection upon which the demurrer was allowed might be avoided in a new indictment, the case be resubmitted to the grand jury.

On August 2, 1950, the state filed notice of appeal from the order.

Section 10015, N.C.L.1929, defines the crime of misconduct in office. Its applicable provisions are: "Every public officer who shall—

"1. Ask or receive, directly or indirectly, any compensation, gratuity or reward, or promise thereof, for omitting or deferring the performance of any official duty * * * shall be guilty of a gross misdemeanor, * * *."

The indictment under consideration thus has charged respondent with the commission of 14 prohibited acts.

Section 10852, N.C.L.1929, provides: "The indictment or information may charge different offenses or

different statements of the same offenses, under separate counts, but they must all relate to the same act, transaction, or event, and charges of offenses occurring at different and distinct times and places must not be joined. * * *"

Court decisions are far from uniform in their holdings with respect to duplicity and misjoinder of offenses. This, however, is largely traceable to lack of statutory uniformity. The clear import of our statute is that more than one offense may not be stated in a single indictment unless all offenses relate to the same act, transaction or event. In this respect we are in accord with a substantial body of the law. Hummel v. People, 98 Colo. 98, 52 P.2d 669; State v. Reichert, 226 Ind. 171, 78 N.E.2d 785; People v. Jackman, 96 Mich. 269, 55 N.W. 809; State v. Brown, 317 Mo. 361, 296 S.W. 125; Shuford v. State, 4 Okl.Cr. 513, 113 P. 211; See Commonwealth v. Mentzer, 162 Pa. 646, 29 A. 720.

In support of the indictment before us appellant contends that all acts charged against respondent collectively constitute but a single offense, that of misconduct in office. Appellant's position in this regard is supported by State v. Bolitho, 103 N.J.L. 246, 136 A. 164, 172, affirmed in 104 N.J.L. 446, 146 A. 927. There it is stated:

"There seems to be no good reason, where the indictment is based upon the accusation of official misconduct in office, why a careful pleader should not allege therein divers acts of official misconduct, even though such acts were committed on different days, and differ in their nature and constitute distinct offenses against the law, so long as they are cognate to the charge of official misconduct.

"Malfeasance in office, generally termed official misconduct, is a common-law offense, and possesses the same characteristics in pleading that obtain in indictments founded on common-law offenses, arising out of or composed of the commission of a series of immoral or unlaw-

ful acts. This is illustrated by the form of indictments for keeping or maintaining a disorderly house, and for other kinds of nuisances. It is true that the keeping of a disorderly house or creating and maintaining any other kind of a public nuisance is a continuous offense, but so also may the offense of malfeasance in office, as was in this case, be made up of various acts of official misconduct, * * *."

The New Jersey law (whether of statutory or common law source) relative to official misconduct and to joinder of offenses is not set forth in the opinion.

In our view such a holding cannot be reconciled with the statutes of this state and cannot here be followed. We are unable to construe our sec. 10015 as contemplating a single, indivisible public duty, and a single, continuing offense of "misconduct in office." The quoted portion of this section, in itself, impliedly recognizes that official duties are multiple and that a crime may be committed in relation to "any official duty."

That society has imposed a constant and continuing duty of respect for the person and property of others provides no escape from the rule against joinder so far as distinct crimes against the person are concerned. Distinct acts of robbery, as an example, may not, simply by virtue of such a continuing duty, be regarded collectively as constituting a single offense. So here, the fact that the office of constable is a continuing one and carries with it a correspondingly constant official duty, does not suffice. Respondent's dereliction was not constant and uninterrupted but occurred by virtue of separate and distinct acts of misconduct. In contrast with the maintaining of a disorderly house or similar cases of nuisance, each act did not simply prolong a continuing course of misconduct nor merge itself therein in such a manner as to lose its identity as a distinct and independent offense. Sec. 10015 does not purport to create a special criminal status of corruption, continuing in existence until atonement. This is not a proceeding for removal from office, as were the Burleigh and Shepard

cases, infra, but one to determine whether the accused is guilty or innocent of a specific crime. The crime is the overt criminal act itself and not the holding of office by a corrupt person.

The holding of this court in Kelly v. State, 59 Nev. 190, 89 P.2d 1, 3, is illustrative of our views in this regard. In that case the defendant was convicted of obtaining money under false pretenses. The facts showed that he had falsely represented ownership of a patent on a radio attachment, had offered one Zunino a 2 percent interest in the patent and on representation that funds were needed to purchase equipment therefor had secured the sum of $75 from Zunino by a series of small payments made over a period of five weeks. Defendant contended that the payments constituted at most a series of misdemeanors rather than a single felony. This court held otherwise, stating: "This is true where each of the crimes is separate and distinct, but an exception obtains where the receipt of the money is obtained pursuant to one design, one purpose, one impulse, or under such circumstances as to constitute a single act without regard to time. * * * The acts may be looked upon as one transaction and constituent and component parts of the same cheat and fraud. * * * The same false scheme actuated Zunino to part with his money each time. * * *"

Reference was there made to the case of People v. Hatch, 13 Cal.App. 521, 109 P. 1097, where the defendant as agent had, without authority, on several occasions loaned money of his principal to himself, the court there holding each loan to be a distinct embezzlement. This court in the Kelly case distinguished the Hatch case in that each loan was there a separate transaction.

In the case at bar, had the $25 paid by Ida Whiterock been paid in installments over a period of time, the Kelly case might well have applied to that particular transaction. As it is, the distinct and unrelated character of each separate transaction set forth in the indictment

distinguishes the Kelly case as clearly as the Hatch case was there distinguished.

The Hatch case was subsequently followed in People v. Stanford, 16 Cal.2d 247, 105 P.2d 969, 971, where it was stated: "In the present case the evidence showed that the thefts referred to in the first three counts of the indictment were separate and distinct transactions, which occurred on different dates, and involved the taking of different sums of money. Such separate transactions constituted separate offenses."

The California court likewise has implied (contrary to the Bolitho holding) that distinct acts of misconduct constitute distinct offenses and cannot, under a statute such as ours, be set forth in a single indictment. In re Burleigh, 145 Cal. 35, 78 P. 242, 243, involved a charge of misconduct of a supervisor. Under a statute providing special procedure for removal from office, a grand jury filed a written accusation of misconduct to which the accused demurred on the ground that more than one offense was charged. The demurrer was sustained upon that ground by the trial court. On appeal it was held that the accusation was not an indictment and not subject to the requirement that a single offense be charged. The opinion states: "The appellants concede that, if the accusation is to be treated as an indictment, then the demurrer was properly sustained. * * * In an indictment, only one public offense can be charged; * * *."

This opinion was subsequently followed in the case of In re Shepard, 161 Cal. 171, 118 P. 513.

It is therefore our view that the acts set forth in the indictment before us constitute separate offenses and do not collectively constitute a single offense.

It may be noted that joinder of separate offenses such as those here under consideration is permitted by statute in many states, including the State of California. In 1915, by statutory amendment, joinder was there permitted of separate offenses not a part of the same act,

transaction or event, provided they be of the same class of crimes or offenses. Illustrative of the potential scope of an indictment under such statutory provisions is the case of People v. Duane, 21 Cal.2d 71, 130 P.2d 123. There joinder of the following was approved: kidnaping and robbery, March 16, 1940; assault with force and violence, July 7, 1940; kidnaping and robbery, July 10, 1940; kidnaping and robbery, August 6, 1940.

Such legislation has never been followed in this state. Indeed, it may be said to have been actually rejected. Prior to its 1915 amendment the California statute was identical with our present statute. Under that act, in People v. Piner, 11 Cal.App. 542, 105 P. 780, 781, it was stated: "It will thus be observed that the Legislature, while recognizing the fact that no danger of violating any of the substantial rights of an accused person could result from charging in an indictment or information two different offenses which have arisen from exactly the same particular circumstances—that is, from the same act, transaction, or event—was careful to protect and safeguard such person against the harm which would inevitably follow the charging of two different offenses occurring at different times and places, and which, in the very nature of things, could have no possible bearing upon or relation to each other whatever."

See, also: In re Burleigh, supra; In re Shepard, supra.

At the time of the 1915 California amendment our statute in its entirety read as follows: "The indictment shall charge but one offense, but it may set forth that offense in different forms under different counts." Our statute was not amended to its present form until 1919, four years after California had added the new ground for joinder. At that time, in so acting, our legislature apparently rejected the new California statute and, word for word, enacted the old in preference.

The Bolitho case, while proceeding upon the theory of a single offense, nevertheless expressly recognizes that

the acts constituting that offense themselves constitute "distinct offenses against the law," all, however, "cognate to the charge of official misconduct." [103 N.J.L. 246, 136 A. 172.] For us to follow such a holding would in effect be to permit joinder of distinct offenses of the same class notwithstanding legislative rejection of such ground for joinder.

It may be argued that the language of the Piner case, as we have quoted it, does not preclude joinder in the case at bar, since respondent's acts of misconduct could have "possible bearing upon or relation to each other." While that language may be said to justify statutory authority to join separate offenses of the same class, it cannot be said to permit us to construe such offenses as collectively constituting a single offense.

In Wear v. State, 30 Okla.Cr. 118, 235 P. 271, 272, it is stated: "The indictment or information must charge but one offense, and the term 'same offense' means, not the same class or kind, eo nomine, but means an offense committed by the same act, transaction, or omission."

The offenses in the indictment before us do not relate to the same act, transaction or event. The charges remain "charges of offenses occurring at different and distinct times and places" and, under sec. 10852, "must not be joined."

It being our view that the trial court properly sustained the demurrer to the indictment upon the ground discussed, it is not necessary to deal with the first ground of demurrer or with the action of the court in sustaining the demurrer upon that ground. The order of the trial court is sustained. In accordance with that order it is directed that the matter be submitted to the same or another grand jury.

BADT, C. J., and EATHER, J., concur.