STATE OF MONTANA, Plaintiff and Respondent, v. R. J. HALE, Defendant and Appellant.

No. 9307.
Submitted March 26, 1955. Decided November 19, 1955.
291 Pac. (2d) 229.

450

Mr. Chief Justice Adair and Mr. Justice Bottomly dissented.

Messrs. Worden and Worden, Missoula, Messrs. Rankin and Acher, Helena, for appellant.

Arnold H. Olsen, Atty. Gen., H. Moody Brickett, Emmet T. Walsh, Asst. Attys. Gen., for respondent.

Mr. Arthur P. Acher, Mr. W. D. Rankin, Mr. Donovan Worden, Mr. Brickett and Mr. Walsh argued orally.

MR. JUSTICE DAVIS:

The appellant Hale was convicted in the district court for Missoula County under R.C.M. 1947, section 94-1805, of the crime commonly known as obtaining money or property by false pretenses. From the final judgment sentencing him to imprisonment for three years at hard labor and from the order denying him a new trial he appeals.

In the opinion written upon the former appeal in this case, State v. Hale, 126 Mont. 326, 249 Pac. (2d) 495, will be found a statement of the facts, not to be repeated here. We add only that upon the reversal and remand for a new trial the defendant asked, and by the trial court was granted, leave to withdraw his plea of "not guilty" that he might demur to the information. One ground of that demurrer was that the facts stated in the information do not constitute a public offense. See R.C.M. 1947, section 94-6703, subd. 4. After argument this demurrer was overruled. The defendant again pleaded "not guilty"; he was again tried and again convicted. Error is now specified by him that this ruling upon his demurrer was wrong.

Initially it is suggested that this contention as well as the demurrer interposed and overruled upon which that contention is made came too late. The argument is that because the accused did not demur to this information when arraigned before the first trial, he may not thus tardily raise the point upon the second trial that the information is bad, although granted by this court a new trial without restriction or limitation. We see no merit in this suggestion.

The rule is that when a first conviction is set aside, as is the case here, the defendant is not precluded upon a remand for a new trial "from attacking the indictment or information, and, on a second trial, he has the same right to challenge its sufficiency and regularity as he had before the first trial." 42 C.J.S., Indictments and Informations, section 312, page 1344; 23 C.J.S., Criminal Law, section 1426, pages 1123, 1124; People v. Nitzberg, 289 N.Y. 523, 47 N.E. (2d) 37, 145 A.L.R. 482;

452

State v. Butler, 72 Md. 98, 18 A. 1105. By R.C.M. 1947, section 94-7602, the "granting of a new trial places the parties in the same position as if no trial had been had." Under a similar statute, N.Y. Code of Crim. Proc. section 544, the New York Court of Appeals has held precisely in point here that where an erroneous judgment of conviction is reversed on appeal ·and there is a remand for a new trial the case stands as though the abortive judgment had never been entered, and accordingly that then the accused may challenge both the sufficiency and the regularity of the charge against him, even though he had not done so at all when the case was first tried. People v. Nitzberg, supra, 289 N.Y. at pages 530, 531, 47 N. E. (2d) 37. We agree with this statement of the law.

The first question then for decision in this court on this ap- ▌▌ ▌▌ is whether a public offense is charged in this information. We think not; and we reach this conclusion without finding it necessary to resolve the constitutional issue raised by the defendant's counsel.

We summarize this information in these words, viz.,

(1) That the defendant "feloniously, knowlingly and designedly, and with intent to defraud Missoula County" obtained from it $600 with interest by presenting to the Missoula County Airport Board a "false and fraudulent claim" in the amount of $600, and in the name of Montana Engineering Company by one "H. B. Waite, Sec'y" for "designs, plans and specifications" covering a described project at the Missoula Airport.

(2) That "pursuant to approval by the Missoula County Airport Board a warrant was drawn upon the County Treasurer of Missoula County," who "believing the representations upon the said warrant to be true, paid a Missoula County Warrant" made in favor of Montana Engineering Co., or order, in the amount of $600, with interest for "Designs, plans and specifications" etc.

(3) That the defendant deposited this warrant in a Missoula bank, and "received therefor credit for the sum of $600.79, lawful money", etc.

Verbatim copies of the claim and warrant are set out in the information, and, as we construe its context, contain the various representations or pretenses by which it is said the county was defrauded.

But there is in this information no specification of any particular representation relied upon which was made by either the claim or warrant, nor of any particular in which any representation so made was false, unless it be that the adjectives "false" and "fraudulent", which are employed to describe the claim, are to be taken as a sufficient averment of this essential fact. No such descriptive words are used to characterize the warrant. We shall, nevertheless, assume for our purposes on this appeal that if this information sufficiently charges the falsity of any material representation made by the claim it is good.

We conclude that it does not, however, and that therefore the information is fatally defective.

More than once heretofore this court has said in civil cases that the use of words of malign import such as "false", "fraudulent", "fraud", etc. is a waste of words, unless "accompanied by a statement of fact upon which the charges of wrongdoing rest". Brandt v. McIntosh, 47 Mont. 70, 72, 130 Pac. 413; Mining Securities Co. v. Wall, 99 Mont. 596, 601, 45 Pac. (2d) 302; State ex rel. State Highway Commission v. District Court, 107 Mont. 126, 131, 132, 81 Pac. (2d) 347. In no case which we have found has this court held to the contrary. The authorities elsewhere agree. Owens v. Green, 400 Ill. 380, 392, 81 N.E. (2d) 149; In re Trigg, 46 N.M. 96, 105, 121 Pac. (2d) 152; Barni v. Kutner, 6 Terry 550, 45 Del. 550, 562, 76 A. (2d) 801; Betz v. Tower Savings Bank, 185 Wash. 314, 322, 55 Pac. (2d) 338; Giordano v. City of Ashbury Park, 3 Cir., 91 F. (2d) 455, 457; Venegoni v. Giudicy, Mo. App., St. Louis, 238 S.W. (2d) 17, 19; Buck v. Hurd, 281 App. Div. 115, 118 N.Y.S. (2d) 305, 307.

The rule in criminal prosecutions is no less rigorous. It has been directly applied to informations and indictments designed

to charge the crime of obtaining money or property by false pretenses as well as similar crimes involving fraud and false tokens.

True, in Montana there is no case directly in point. But in this jurisdiction it has long been elementary that an essential element of the crime here is the falsity of the representations made. State v. Bratton, 56 Mont. 563, 566, 186 Pac. 327; State v. Brantingham, 66 Mont. 1, 16, 212 Pac. 499; State v. Woolsey, 80 Mont. 141, 155, 259 Pac. 826. And elsewhere it has been repeatedly held that the particulars in which the representations relied upon are false must appear from facts directly and positively set out, that to characterize a representation as "false" or "fraudulent" does not suffice to state the offense.

To this effect are the California decisions under sections of the California Penal Code, which at the time were substantially identical with the present Montana statutes. See People v. Carpenter, 6 Cal. App. 231, 91 Pac. 809, citing directly to the point where the charge involved the presentation of a false claim against a county, People v. Mahony, 145 Cal. 104, 106, 78 Pac. 354.

Elsewhere the decided cases accord. Harris v. State, 125 Ohio St. 257, 260, 181 N.E. 104; Du Brul v. State, 80 Ohio St. 52, 87 N.E. 837; State v. Van Gunten, 84 Ohio St. 177, 182, 183, 95 N.E. 662; Burke v. Knox, 59 Utah 596, 605, 206 Pac. 711; Wills v. State, 24 Tex. App. 400, 6 S.W. 316; Sasse v. State, 113 Tex. Crim. 513, 22 S.W. (2d) 941; State v. Palmer, 50 Kan. 318, 322, 323, 32 Pac. 29; Commonwealth v. Sanders, 98 Ky. 12, 32 S.W. 129; Commonwealth v. Wilson, 190 Ky. 813, 814, 815, 229 S.W. 60; Burnley v. Commonwealth, 274 Ky. 18, 117 S.W. (2d) 1008; State v. Bradley, 144 La. 459, 80 So. 657; Wimer v. State. 120 Tex. Cr. R. 576, 583 to 587, 48 S.W. (2d) 296; Moore v. State, 81 Tex. Cr. R. 606, 197 S.W. 728; People v. Winner, 80 Hun 130, 30 N.Y.S. 54; State v. Ruwwe, Mo., 242 S.W. 936; 35 C.J.S., False Pretenses, section 42c(1), page 690; 25 C.J., False Pretenses, section 60, pages 626, 627, 628.

Read in the light of these citations both in this court and from other jurisdictions the challenged information at bar charges only that Hale presented for allowance to the Missoula County Airport Board the described claim, which was approved, and upon which a warrant was drawn against the county, and that thereafter this warrant upon which the county treasurer relied was paid Hale in the sum of $600.79. This is not enough. The demurrer should have been sustained for failure to set out the facts upon which the charge of falsity rests.

In opposing this conclusion the attorney general argues that █ the information is in the language of the controlling statute, and is therefore good. We recognize the general rule to be as stated. But to that rule there is an exception which is as well recognized as the rule itself, viz., that where the statute uses general or generic words in defining the offense the information or indictment bottomed upon that statute must specify the particular facts which constitute the offense. 42 C.J. S., Indictments and Informations, section 139g, pages 1042, 1043; 31 C.J., Indictments and Informations, section 264, pages 712, 713.

This exception has been recognized by this court. See State v. Wolf, 56 Mont. 493, 185 Pac. 556. This exception has been recognized in California as the rule where the charge is of fraud or false pretenses under statutes like ours. People v. Mahony, supra, 145 Cal. at page 106, et seq., 78 Pac. 354; People v. Butler, 35 Cal. App. 357, 361, 362, 169 Pac. 918; People v. Walther, 27 Cal. App. (2d) 583, 587, 81 Pac. (2d) 452; etc. This exception has met universal recognition in such cases in other courts as the decisions and authorities cited above indicate.

Moreover, we are persuaded further that our conclusion here is correct when we note the uniform practice heretofore in like cases brought to this court for review. We have examined the informations in State v. Hanks, 116 Mont. 399, 153 Pac. (2d) 220; State v. Foot, 100 Mont. 33, 48 Pac. (2d) 1113; State v. Woolsey, supra; State v. Brantingham, supra; and State v.

Bratton, supra. In each the information expressly alleged the facts which made the stated pretense false. In none of these cases did the state rely upon the averment alone that the defendant made a ''false'' or ''fraudulent'' representation.

In the federal courts the practice is the same. Compare McCoy v. United States, 9 Cir., 169 F. (2d) 776, 778, 779.

It is a crime under Title 18, section 287, U.S. Code, for one to present a claim against the United States ''knowing such claim to be false, fictitious, or fraudulent,'' etc. The Federal Rules of Criminal Procedure (Rev. Ed. 1955), 18 U.S.C.A., where is found the ultimate in simplified criminal practice, prescribe this form for an indictment charging a violation of this statute:

''On or about the ............... day of ..........., 19...., in the ..........., District of ..........., John Doe presented to the War Department of the United States for payment a claim against the Government of the United States for having delivered to the Government 100,000 lineal feet of No. 1 white pine lumber, and he then knew the claim to be fraudulent *in that he had not delivered the lumber to the Government.*'' (Emphasis supplied). Fed. Rules Crim. Proc., Appendix of Forms, Form 10, 18 U.S.C.A.

It seems then that nothing less states an offense under section 94-1805, supra, of our Codes; and in the circumstances of this case we have found no authority which sustains an information or indictment which alleges less.

In this court State v. Phillips, 36 Mont. 112, 92 Pac. 299, 300, is the authority nearest in point with the state's argument; and although this decision is neither cited nor noticed in the briefs or the oral argument at bar, we have given it consideration. There the pretense charged was that ''the defendant was the brother of Charles Phillips''; the falsity of that pretense was averred by the recital: '' 'Whereas said David Phillips [defendant] then knew said pretenses were false' ''. This traverse was held sufficient, the information good. But there is no such traverse in the information now before us.

And, if there were, this citation would not help the state

on this appeal; for it is plainly to be distinguished on its facts and by the authorities. It is one thing to allege a representation made that A is B's brother; to deny by saying that representation is false. Here the denial that A is B's brother is clear, certain and factual, and is so understood by anyone who reads the accusation. This may be a sufficient pleading.

It is another thing altogether, however, to allege that the defendant Hale presented a "false and fraudulent claim" without a specification of the facts, which show that at least some material representation made by that claim is not true. Without such a specification there is no traverse at all of any representation which the claim makes. The denial is wholly by way of conclusion, and is so understood by anyone who reads the charge. This is a fatally defective statement of the offense. The authorities make this distinction.

In Wimer v. State, supra, the false representations alleged were rooted in eight promissory notes and a trust agreement by which these notes were assigned to create a fund for the payment and retirement of certain described investment certificates. In much greater detail indeed than in the information before us the charge in the Wimer Case attempted to traverse the truth of the representations made by these documents.

The Texas Court, however, said, 120 Tex. Cr. R., 584, 48 S.W. (2d) 299:

"It is the general rule that an averment that the pretenses were false is sufficient negation of the truth of the pretenses, unless the pretense is of such nature that the negation of the truth thereof requires allegations showing affirmatively in what the falsehood consisted in order that the accused may be apprised of the evidence he must meet. 25 Corpus Juris, page 627;. * * *."

It was there held consistent with the authorities cited, 120 Tex. Cr. R. 586, 48 S.W. (2d) 301:

"The facts constituting the offense must be set forth so that the conclusions of law may be arrived at from the facts so stated.. * * *"

Accordingly the indictment was quashed. We think the same rule is clearly to be applied to the information here against the defendant Hale.

We think the state's position is unsound that in this case the prosecution may stand upon the language of the statute, which as reflected in this charge contains nothing but conclusions without any supporting facts to show the falsity of the specific pretenses relied upon for a conviction.

The state also argues that the real objection taken by Hale ▮ to the sufficiency of this information falls under subdivision 2 of section 94-6703, supra, to the point that the charge is uncertain, compare People v. McPheeley, 92 Cal. App. (2d) 589, 591, 592, 207 Pac. (2d) 651; People v. Burness, 53 Cal. App. (2d) 214, 217, 218, 127 Pac. (2d) 623; People v. Mc-Kim, 84 Cal. App. 663, 665, 258 Pac. 457, and does not therefore properly come under subdivision 4 that the facts stated do not constitute a public offense. This objection advanced at this time, if such were the case, must necessarily be considered waived under R.C.M. 1947, section 94-6711, because it is not specified as a ground of the demurrer before us.

But this argument also has no merit. The demurrer pointedly challenges the information for want of facts in the language of subdivision 4 of the statute; and we have so considered and ruled the question raised. Conversely there is no question here of a sufficient charge artlessly drawn; and we have neither considered nor answered any such question, which could properly be presented only under subdivision 2.

There is some suggestion in the argument of the defendant's ▮ counsel that this information is designed to charge the offense denounced by R.C.M. 1947, section 94-3908, as well as the crime of obtaining money by false pretenses under section 94-1805, supra. If so, what we have said above is equally pertinent. The information as it is framed does not state an offense under either statute for the reasons we have given; the demurrer is good upon any construction of the charge.

But we do not agree with the further implication of counsel's

argument that an information which sufficiently states an offense under section 94-1805, supra, is necessarily duplicitous, because it must charge as well the crime of presenting a false claim against the county. An information which adequately avers the elements of the one offense does not charge the other as a separate crime. Upon this record we do not decide whether the latter may be included in the former. It would be idle to speculate upon the sweep of an accusation not before us. We hold only that an information may be drawn consistent with section 94-1805, which is not vulnerable to the objection that it is bad for duplicity.

For another reason wholly apart from the point made that the information does not state a public offense there must be a reversal in this case. The trial court erred in refusing to give in its entirety the defendant's offered Instruction No. 26. This offer originally read: "You are instructed that if you believe from all of the evidence that the defendant performed the services for the county in supervising planning, preparing plans and specifications for the rebuilding of the airport runway and that the $600.00 claimed was compensation for such services actually rendered and that the defendant acted in good faith in performing such services and presenting said claim, then the state has failed to prove the criminal intent necessary to establish the offense charged, and you should find the defendant not guilty." The court deleted the words "and you should find the defendant not guilty."

As thus modified the instruction was then given. But as modified the instruction given was incomplete. The jury were not told what they must do with the case, should they find the facts as the instruction put them. In short by the deletion made the court effectively drew the teeth of this instruction and made it wholly pointless as a charge upon the sufficiency of the defense, if sustained.

Moreover, no other instruction given covered the point, or fairly put the defense before the jury. The accused was entitled to have the jury told that if the facts found were in ac-

cordance with this instruction he must be acquitted. Compare State v. Quinlan, 84 Mont. 364, 372, 275 Pac. 750; State v. McCracken, 93 Mont. 269, 275, 276, 18 Pac. (2d) 302; Little v. United States, 10 Cir., 73 F. (2d) 861, 867.

Since the case must then be remanded for another trial, other questions presented by the record must also be reviewed.

In the opinion in State v. Hale, 126 Mont. 326, 249 Pac. (2d) ██ 495, written on the first appeal and again in the dissenting opinion of the Chief Justice on this appeal it is said that R.C.M. 1947, section 25-201, prohibits the county surveyor from obtaining anything as compensation for official services rendered other than his salary. We think this statute has no such effect. We think that this construction reads something into section 25-201 that the legislature never intended. That statute does not prohibit the collection of fees by county officers. All that section does is provide for the disposal of fees which have been collected by them for official services rendered. This much clearly appears from its title reading: "Disposal of fees collected by county officers." Likewise this is what the body of the section deals with. It provides: "No county officer shall receive for his own use, any fees, penalties or emoluments of any kind, except the salary as provided by law, for any official service rendered by him, but all fees, penalties and emoluments of every kind must be collected by him for the sole use of the county and must be accounted for and paid to the county treasurer as provided by section 25-203 of this code and shall be credited to the general fund of the county." There is nothing in this statute which makes Hale's claim here false merely because he presented it for the work he did.

Further in State v. Hale, 126 Mont. 326, 249 Pac. (2d) 495, again on the first appeal, it was also erroneously determined that the planning, construction and maintenance of the Missoula County Airport were county functions done for county purposes. R.C.M. 1947, section 1-822, which was relied on as supporting that view, in fact states that these activities are "county

functions and purposes *as well as public and governmental."* (Emphasis supplied.)

That the business of the Missoula County Airport is not strictly and exclusively a county function is evidenced by the fact that its affairs are conducted not by the county commissioners, but by a separate board called the Airport Board. The $600 warrant in question here was not paid out of county funds, but was drawn on the "Airport Commission Fund". This fund may be raised by taxation, R.C.M. 1947, section 1-816, or may result from federal or state aid, R.C.M. 1947, section 1-818.

We are not to be understood as being of the opinion that the ▮ defendant was justified in retaining the $600, paid him by the claim here presented, merely because these moneys were not strictly speaking county funds. What we do say is that the defendant had the right to be tried under proper instructions applicable to his case consistent with rules of law which fit his case. Specifically we are not aware of any statute that makes it the duty of the county surveyor to do the work of the airport board without compensation over and above his salary. Nor do we know of any statute which forbade the filing of the claim here by Hale. Here the record shows that it would have involved an expenditure of $2,500 to obtain someone else to do the work for which defendant charged $600. Had defendant put in a claim in his own name for $600, our attention has been directed to no statute which would prohibit its payment. As county surveyor he was not called up to render these services because of his office.

Nor do we think we are precluded on this appeal from changing our view, as we do, of the law applicable to Hale's case as previously announced on the first appeal. The doctrine that the law there declared became the law of the case does not reach the third trial of this case when we are convinced of error in our previous opinion. In examining the record now before us we are bound by the legal principles there promulgated, for the reason that the trial judge should not be put in error because he followed the law there declared. Cases supporting this

view are cited in State v. Gunn, 89 Mont. 453, 466, 300 Pac. 212.

But the rule that the law of the case is applicable to future proceedings had in the same case does not prevent the court of last resort from correcting a manifest error in its former opinion where to do so promotes justice without substantial injury to anyone. As some writers put it, the evils of adherence to the rule are sometimes greater than those of a departure from it. The cases are collected in the annotations at 1 A.L.R. 1270, 8 A.L.R. 1033, and 67 A.L.R. 1390. And see the case of Johnson v. Cadillac Motor Car Co., 2 Cir., 261 F. 878, 882-887, 8 A.L.R. 1023. Here we need not depart from the rule; but on the other hand we shall not extend that rule beyond the reason for it.

When, as here, we remand the case for a third trial we are not and should not be precluded from asserting the principles of law applicable which are to be applied prospectively upon the third trial, even though to do so necessitates overruling in part the opinion first promulgated; for we are convinced now that that opinion is wrong as we have pointed out above. Barton v. Thompson, 56 Iowa 571, 572, 9 N.W. 899, 41 Am. Rep. 119; Pennington v. Gillaspie, 66 W.Va. '643, 650, 652, 66 S.E. 1009; and see Wiggin v. Marsh Lumber Co., 79 W.Va. 651, 656, 657, 91 S.E. 532. In other words, the law of the case for the third trial is announced now on this the second appeal so far as our present opinion conflicts with what was said on the first appeal.

The judgment of the district court is accordingly reversed with directions to allow the defendant's demurrer to the information, and thereafter to proceed under R.C.M. 1947, section 94-6707, and, if an amended information be filed, to a new trial as may be consistent herewith.

MR. JUSTICE ANDERSON:

I concur.

MR. JUSTICE ANGSTMAN: (specially concurring).

On the first appeal of this case I disagreed with the majority opinion. State v. Hale, 126 Mont. 326, 249 Pac. (2d) 495. At that time no question was considered as to the sufficiency of the information. When the case was remanded for new trial, defendant's counsel asked and was granted leave of the court to withdraw the plea of not guilty and to file a demurrer questioning the sufficiency of the informaiton.

On the second appeal I wrote the opinion cited by the Chief Justice in his dissenting opinion. Two of the justices dissented from what I wrote and the Chief Justice agreed only with the result reached in my opinion.

On Petition for Rehearing filed by Worden & Worden as counsel for defendant, that opinion was in legal effect withdrawn because the petition for rehearing was granted in an order signed by all members of the court. I signed that order because of doubts which I had about the correctness of the opinion.

Upon further study of the case after the rehearing was had I am persuaded that the opinion of Mr. Justice Davis is correct and supported by logic as well as adjudicated cases therein cited.

MR. CHIEF JUSTICE ADAIR: (dissenting).

R. J. Hale was the duly elected, qualified and acting county surveyor of Missoula County, Montana, from the year 1946 to and including the whole of the year 1950, during which time he was also a member and the secretary of the Missoula County Airport Board, which, pursuant to legislative authority, had been duly established by resolution of the board of county commissioners of Missoula County.

As county surveyor Hale was a county officer,—his salary was fixed by law and his duties were prescribed by law. These included the duty to ''make all surveys, establish all grades, prepare plans, specifications and estimates'' for his county. R. C.M. 1947, section 16-3302.

The planning, construction and maintenance of the Missoula County Airport were and are county functions and for county purposes and the county surveyor's work and services in making surveys, establishing grades and preparing plans, specifications and estimates for the county including the county airport, all came within Hale's prescribed duties as county surveyor. R.C.M. 1947, section 16-3302.

As full compensation for his said services as county surveyor Hale was regularly paid and he regularly received from Missoula County the full salary prescribed by law and he was prohibited by statute R.C.M. 1947, section 25-201, from receiving for his own use any fees or compensation for his work and services on Missoula County's airport and runways other than his prescribed salary as county surveyor. State v. Hale, 126 Mont. 326, at page 327, 249 Pac. (2d) 495.

Section 25-201 of the Revised Codes of Montana of 1947 provides: "No county officer shall receive for his own use, any fees, penalties or emoluments of any kind, except the *salary* as provided by law, for any official service rendered by him, but all fees, penalties and emoluments of every kind must be collected by him for the sole use of the county and must be accounted for and paid to the county treasurer as provided by section 25-203 of this code and shall be credited to the general fund of the county." Emphasis supplied.

Notwithstanding the above prohibition Hale, while so serving as the county surveyor of Missoula County and receiving the salary fixed by law therefor, on November 16, 1950, prepared, swore to, presented and filed with and against the Missoula County Airport Commission, a written claim and demand in the amount of $600 for designs, plans and specifications for runway sealcote for Missoula County's Airport in payment of which claim Hale received, cashed and deposited to his individual credit and use a Missoula County warrant in the sum of $600.79 over, above and in addition to his salary as provided by law, section 25-201.

Had the claim been made in the name of R. J. Hale, instead

of "Montana Engineering Company, Missoula, Montana, Cr." it would not have received the approval of any member of the Missoula County Airport Board nor would a county warrant have been issued therefor nor would such warrant have been honored and paid by the county treasurer.

For these reasons in making, subscribing and swearing to such claim Hale refrained from using his own name. Instead he knowingly and designedly concealed his true name and identity by falsely pretending and representing that he was "H. B. Waite" and that he was the secretary of a nonexisting "company" and by using and signing the fictitious name "Montana Engineering Company H. B. Waite Sec'y" on and to said false claim which he then had falsely notarized by a county employee, hired by Hale and working in his office and under his direction, just as though a person named "H. B. Waite" had actually appeared before such notary and there sworn to the correctness of the claim. However only the defendant appeared before the notary,—only the defendant swore to the claim and it was the defendant who wrote and signed the name of "H. B. Waite" thereto.

Section 94-3908 of the Revised Codes of Montana of 1947 provides: "Every person who, with intent to defraud, presents for allowance or for payment * * * to any county, * * * board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is guilty of felony."

Section 94-1805 of the Revised Codes of Montana of 1947 provides: "Every person who knowingly and designedly, by false or fraudulent representation or pretenses, defrauds any other person of money or property, including evidence of indebtedness * * * and thereby fraudulently gets into possession of money or property, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained."

On March 23, 1951, on leave of the district court first had and obtained, Wesley Castles, then county attorney of Missoula

County, Montana, filed in the district court of that county an information accusing the defendant R. J. Hale of the crime of obtaining the sum of $600.79 from Missoula County by false pretenses.

On such information Hale was twice tried, convicted and sentenced and from the judgments of conviction entered against him he took two separate appeals to this court. See State v. Hale, 126 Mont. 326, 249 Pac. (2d) 495, decided May 27, 1952 and State v. Hale first decided February 25, 1954. Read State v. Bourdeau, 126 Mont. 266, at pages 270, 271, 246 Pac. (2d) 1037, at pages 1039, 1040.

On this defendant's second appeal, this court on February 25, 1954, in a three to two decision, affirmed both the judgment of conviction entered against the defendant and the trial court's order denying him a new trial, State v. Hale, whereupon defendant petitioned for and was granted a rehearing at which stage he retained additional counsel to represent him before this court.

Before the rehearing was had Associate Justice Freebourn, who had written the majority opinion on the first appeal and who had sat and heard the first oral argument on defendant's second appeal, died. Following the appointment of a successor to fill the vacancy on the court so occasioned, all specifications of error and points of law originally raised on the first hearing of the second appeal, were again fully presented, argued and submitted to all five members presently constituting this court and now the majority opinion herein rules and holds:

1. That the information fails to state sufficient facts to constitute any public offense under the laws of Montana;

2. That in instructing the jury, the trial judge committed reversible error by deleting and striking the last eight words from defendant's offered instruction No. 26;

3. That this court's opinion, by Mr. Justice Freebourn determining defendant's first appeal, is wrong, State v. Hale, No.

9101, 126 Mont. 326, at pages 326-328, 249 Pac. (2d) 495, at pages 495-496;

4. That the majority opinion on the first appeal erroneously interpreted and construed the provisions of section 1-822, R. C.M. 1947, in holding: "The planning, construction and maintenance of the Missoula county airport are 'county functions' and for county 'purposes.' R.C.M. 1947, section 1-822". 126 Mont. at page 327, 249 Pac. (2d) 495;

5. That the majority opinion on the first appeal erroneously interpreted and construed the provisions of section 25-201 wherein it stated: "Defendant's work on the airport runways was work which came within his duties as county surveyor. He was not legally entitled to the $600 claimed for such work for the reason that 'No county officer shall receive for his own use, any fees, penalties or emoluments of any kind, except the salary as provided by law, for any official service rendered by him * * *.' R.C.M. 1947, section 25-201. See State ex rel. Matson v. O'Hern, 104 Mont. 126, 65 Pac. (2d) 619; Peterson v. City of Butte, 44 Mont. 401, 120 Pac. 483; State ex rel. Rowe v. District Court, 44 Mont. 318, 119 Pac. 1103; and Grady v. City of Livingston, 115 Mont. 47, 141 Pac. (2d) 346." 126 Mont. at page 327, 249 Pac. (2d) 495;

6. That the doctrine that the law, as declared in the majority opinion on the first appeal, 126 Mont. 326, 249 Pac. (2d) 495, became the *law of the case* does not reach the third trial of this case;

7. That the *law of the case* for the third trial is as announced now on this the second appeal so far as the present majority opinion conflicts with what was said in the majority opinion which determined the first appeal.

From the majority opinion this day pronounced and from each and all of the foregoing conclusions, rulings and holdings therein I dissent.

*The Information.* The information is follows:

"In the District Court of the Fourth Judicial District of the State of Montana, in and for the County of Missoula.

"The State of Montana,
　　　　　　Plaintiff,　　　　　　　　　　　　　No. 2682
　　vs.　　　　　　　　　　　　　　　　　　　Information
"R. J. Hale,　　　　　　　　　　　　　Filed: Mar. 23, 1951.
　　　　　　Defendant.

"In the District Court of the Fourth Judicial District of the State of Montana, in and for the County of Missoula, on this 23rd day of March, 1951, in the name and on behalf and by the authority of the State of Montana, R. J. Hale is accused by Wesley Castles, County Attorney in and for the County of Missoula, by this Information, of the crime of Obtaining Money by False Pretenses, a felony committed as follows, to-wit:

"That at the County of Missoula, State of Montana, on or about the 16th day of November, A. D. 1950, and before the filing of this Information, the said defendant then and there being, did then and there feloniously, knowingly and designedly, and with intent to defraud Missoula County, a political subdivision of the State of Montana, did obtain from the said Missoula County the amount of Six Hundred and 79/100 Dollars ($600.79) by presenting for allowance to the Missoula County Airport Board a false and fraudulent claim in the words and figures following:

　　　　　　"Missoula County Airport
　　　　　　　　Commission
　　　　　　　"Montana
"1950 To Montana Engineering Company,
　　Missoula, Montana.　　　　　　　　　　　　　Cr.
"Aug. 1 Designs plans and specifications
　　"Runway seal-cote project No. 9-24-040-002　　600.00
　　　　　　　　　"Amount of Bill
　　　　　　　　　"Amount Disapproved
　　　　　　　　　"Amount Approved

"State of Montana  } ss.
"County of Missoula }

"The undersigned, being duly sworn, says that the items mentioned in the foregoing account were furnished as therein stated and that the amount therein claimed is correct, just, due and wholly unpaid.

"Montana Engineering Company

"Sign Here                         /s/ H. B. Waite Sec'y

"Subscribed and sworn to before me this 16 day of Nov. 1950.

"/s/ Harvey Hill

"Notary Public for the State of Montana,

"Residing at Missoula, Montana.

(Seal)                "My commission expires March 2nd, 1953.

"(on the back of said claim appears)

"Airport Board Claim

"Warrant No.                          389
"Claimant                            Mont. Eng. Co.
"For                                 Design and plans
"Filed                               Nov. 16, 1950

"/s/ O. J. Mueller

"Airport Commission Fund                          $600.00
"Approved                                         19........

"/s/ N. B. Matthews

"Vice Chairman Airport Commission

"/s/ Edward T. Dussault

"Board Member

"Distribution

"220 Runway Construction                          $600.00

"and that pursuant to approval by the Missoula County Airport Board, a warrant was drawn upon the County Treasurer of Missoula County, and the said County Treasurer believing the representations upon the said warrant to be true, paid a Missoula County Warrant in words and figures following:

470

"County Warrant    "Missoula Montana                    No. 389
                   "November 16, 1950
         "Secretary Missoula County Airport Board
" (Joe D. Brown        The Treasurer of              $600.00
  County Treasurer
Missoula, Missoula,    Missoula County      Int.          .79
Montana PAID
Dec. 21, 1950)                              Total     $600.79
                   "Will Pay to Montana Engineering Co.
                   "Missoula, Montana                or order
                   "Exactly $600 & 00 Cts.           Dollars
"For Designs, plans and specification runway seal-cote project.
"Out of any Money in the Treasury belonging to the Airport
     Fund.
"Presented and registered December 6, 1950.
                        "/s/ N. B. Matthews
                        "Vice Chairman Airport Commission
                        "/s/ R. J. Hale
                        "Secretary
"Not Paid for Want of Funds
"Joe D. Brown     Treasurer
"By /s/ J. Zeits    Deputy
" (on the back thereof on said Warrant appears)
"Endorsement   H. B. Waite
                R. J. Hale
"Payment guaranteed by Montana Engineer
     R. J. Hale Engr.
"Western Montana National Bank          Missoula, Montana
    "That the said Warrant was received by the defendant and
deposited by the defendant at the Western Montana National
Bank of Missoula, Montana and he, the said defendant, received
therefor credit for the sum of Six Hundred and 79/100 Dollars
($600.79) lawful money of the United States, all of which is
contrary to the form, force and effect of the statute in such

case made and provided, and against the peace and dignity of the State of Montana.

"Wesley Castles
"County Attorney in and for
"the County of Missoula, Montana
" (Duly Verified by the County Attorney.)
"Witnesses on part of state:

"Harvey Hill   Walker B. Carroll
"Joe D. Brown   Harry Butler
"Wesley Castles   N. B. Matthews
"Norman Zimmerman  O. J. Mueller
"O. H. Mann    H. O. Bell
"Edward T. Dussault  A. M. Johnson"

*Sufficiency of Information.* The above *information* is the first pleading on the part of the state in this criminal action. R.C.M. 1947, section 94-6402.

Its office is to *inform* the district court of the accusation and give it jurisdiction and also to *inform* the accused of what offense he is charged so as to enable him to prepare his defense. See 42 C.J.S., Indictments & Informations, section 11, page 851.

The information herein adequately performs and serves each of such offices.

In determining the *sufficiency* of the information the strict and rigid rule of the ancient common law has no application whatever. R.C.M. 1947, section 94-101.

The rules by which the *sufficiency* of the information is to be determined are those, and only those, prescribed by the Penal Code and set forth in Volume 8, Title 94 of the Revised Codes of Montana of 1947. R.C.M. 1947, section 94-6401.

The Legislature has provided an approved model form of information for use in this jurisdiction which form is set forth in section 94-6404 of the Revised Codes of Montana, 1947.

The matters and things which must be contained in the information are those specified in sections 94-6403 and 94-6405 of the Revised Codes of Montana, 1947.

The only tests for determining whether or not the information is *sufficient* are those expressly and particularly prescribed by the Legislature in section 94-6412 of the Revised Codes of Montana, 1947.

''The sufficiency of every information is to be tested by the rules prescribed by the Penal Code.'' State v. Stickney, 29 Mont. 523 at page 528, 75 Pac. 201, 203.

The Penal Code, Vol. 8, Title 94, R.C.M. 1947, pages 1-568, governing crimes and criminal procedure is a complete Code wherein the Legislature has specifically designated each step in the criminal procedure and practice of this jurisdiction. State v. Bosch, 125 Mont. 566, at pages 586-588, 242 Pac. (2d) 477, at pages 487, 488.

The information herein states too many rather than too few facts.

It *informs* too much rather than too little.

It not only fully meets all the requirements of Montana's Penal Code but it goes far beyond such requirements to *inform* the accused in detail of the design, scheme and plot of which he is accused and of the particular means, devices and documents which it is charged he knowingly and designedly used in obtaining $600.79 of the county's money to which he was not entitled.

The information is in the form of the model approved, recommended and prescribed by the Legislature in section 94-6404, supra.

It contains all the matters and things specified in section 94-6403.

It is direct and certain as it regards (1) the party charged, (2) the offense charged and (3) the details and particular circumstances of the offense charged as provided in section 94-6405.

It fully meets and satisfies each test provided by the Legislature in section 94-6412 for determining the *sufficiency* of indictments and informations.

In its charging part the information follows almost literally

the words used by the Legislature in section 94-1805 of the Codes to describe and define the offense of Obtaining Money By False Pretenses which offense "is punishable in the same manner and to the same extent as for larceny of the money * * * so obtained." R.C.M. 1947, section 94-1805.

When tested by the above rules so prescribed by Montana's Penal Code, the facts stated in the information herein are found to be more than sufficient to constitute the offense of Obtaining Money By False Pretenses so described, defined, denounced and made punishable under the provisions of section 94-1805, supra.

The clear intent of the Montana Legislature in enacting sections 94-101 and 94-6401, supra, was and is to do away with the ancient highly technical common law pleadings as well as the ancient tests for the determination of their sufficiency and to substitute therefor the much simpler tests laid down in the Penal Code.

These Code provisions were intended to relax the technical rules which prevailed at ancient common law and to simplify the procedure to the end that regard to substance, rather than to form, should be the rule of interpretation. State v. Brown, 38 Mont. 309, at page 312, 99 Pac. 954.

In State v. Shannon, 95 Mont. 280, 285, 26 Pac. (2d) 360, 362, this court said: "Courts generally hold that an information is sufficient when it literally or substantially follows the language of the statute. 15 C.J. 367. The modern tendency of criminal procedure has been distinctly towards simplification."

Under the Code particularly to the point of absurdity is no longer required in an indictment or information.

In State v. Gondeiro, 82 Mont. 530, 535, 536, 537, 268 Pac. 507, 509, this court said: "As every student of law knows, one accused of crime was greatly restricted in his defense by the early laws of England. Because of this, solicitude for the accused brought into existence the common-law system of criminal pleading under which it was deemed necessary to state

the offense charged with the greatest particularity. This was done sometimes to the point of absurdity. The reason given for the requirement was that the defendant might be fully informed as to the case against him to enable him to prepare for his defense. Availing himself of the technicalities provided by law, the criminal altogether too frequently went unwhipped of justice. He took advantage of the rules provided for his protection, and made the administration of the law little better than a public scandal. For centuries the system 'aided criminals in escaping the penalty of crime, to the great reproach of the law, without affording any assistance in the administration of justice.' * * *

"* * * Over sixty years ago the Supreme Court of California, in People v. King, supra [27 Cal. 507, 87 Am. Dec. 95], said: 'A disposition to relax much of this ancient strictness in criminal proceedings has manifested itself in modern practice, and in harmony therewith the Legislature of this state has substituted, in the place of the old, a new system of practice and pleading, which retains all the elements of the former so far as they are made necessary by a due regard for the substantial rights of a defendant, but discards all such elements as serve no good purpose, and only tend to embarrass and defeat the administration of justice. That system provides a few plain and simple rules by which to determine the sufficiency of pleadings, and declares that such rules shall be the test. Section 235.' Section 235, cited in the opinion, was re-enacted as section 948 of the Penal Code of California. We borrowed it from California, and it appears in our 1921 Revised Codes as section 11841 [now R.C.M. 1947, section 94-6401]."

In drafting the legislation that is now section 94-1805 of the Codes and in describing and defining the acts and conduct therein denounced, the Legislative Assembly used the words and phrases "knowingly", "designedly", "defraud", "false", "false or fraudulent representation", "false or fraudulent * * * pretenses".

In drafting the information herein and in describing and

characterizing the acts and conduct of the defendant alleged to be violative of section 94-1805, the county attorney employed the same words, phrases and language, which the Legislature had used in enacting such Code section.

The designated words and phrases so employed by the Legislature in enacting section 94-1805 of the Penal Code and thereafter adopted and used by the county attorney in drafting the information in this case are all words and phrases *defined by law* and they must be given their legal meaning when used in an information forming the basis for a criminal prosecution.

Section 94-6410 provides: "The words used in an indictment or information are construed in their usual acceptance in common language, *except such words and phrases as are defined by law, which are construed according to their legal meaning.*" Emphasis supplied.

*Words Defined by Law.* Below are the words and phrases used in the information that are defined by law together with their legal meaning, section 94-6410, viz.:

"*Defraud.* To practice fraud; to cheat or trick; to deprive a person or property or any interest, estate, or right by fraud, deceit, or artifice." Black's Law Dictionary (3rd Ed.), page 544.

"*Design.* Plan, scheme, or intention carried into effect." Black's Law Dictionary, page 566.

"*Designedly.* Sometimes equivalent to the words 'wilfully,' 'knowingly,' 'unlawfully,' and 'feloniously.'" Black's Law Dictionary, page 566. See 26 C.J.S., at pages 1237, 1238, notes 69-76, page 1241.

In State v. McLamb, 235 N.C. 251, 69 S.E. (2d) 537, 540, it is said that the word "designedly" means done by design or purposely. It is opposed to accident or inadvertence.

"*False.* * * * In law, this word usually means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud." Black's Law Dictionary, page 748.

"*False Claim*, in the forest law, was where a man claimed more than his due, and was amerced and punished for the same. * * * As used in a statute making it a felony to present to any state, county, or city board or officer a false or fraudulent claim, a 'false claim' is something more than a merely excessive claim." Black's Law Dictionary, page 749.

As used in the information in the instant case the "false claim" was made when the county surveyor, R. J. Hale, knowingly, and designedly made, signed, swore to and presented for approval and warrant, the written claim and demand wherein he represented and pretended to be "H. B. Waite" and pretended and represented that he was then the secretary of the purely fictitious "Montana Engineering Company" and by means of such false pretenses, representations and claim he obtained from the county a county warrant on which he received the sum of $600.79 which was deposited to his own use and credit in his personal bank account, which warrant the county treasurer of Missoula County paid out of money in the county treasury then and there belonging to the Missoula County Airport Fund, all in violation of the provisions of sections 25-201 and 94-1805.

*Falsely and feloniously representing*". In State v. Hanks, 116 Mont. 399, 153 Pac. (2d) 220, 221, the defendant Hanks was tried and convicted of the crime of obtaining property by false pretenses in violation of section 11410, Revised Codes of Montana of 1935 (now being R.C.M. 1947, section 94-1805). There the court said: "The other question raised by the appeal is the sufficiency of the information to charge a public offense. The information recites that the county attorney charges 'that the said R. F. Hanks * * * did * * * *defraud* R. A. Shumate of a buckskin stallion * * * by * * *falsely and feloniously representing*' to Shumate that he was acting as agent for Neavitt 'in the purchase of said horse * * * and that the check which was then and there delivered' by Hanks to Shumate 'as payment for said horse' was the check of Neavitt and had been received by Hanks 'to be delivered to' Shumate 'as

the purchase price of said horse.' " In disallowing the defendant's challenge to the sufficiency of the above information in the Hanks case, this court said that while the information may not be a model pleading in some respects, nevertheless, "There can be no doubt that the allegations were not so defective as not to acquaint defendant with a charge against him or to subject him to another possible prosecution for the same offense, or to prevent the information from stating a public offense."

*"Feloniously."* In State v. Rechnitz, 20 Mont. 488, 52 Pac. 264, 265, this court said: "The word 'feloniously' is descriptive of the act charged. It means that the act was done with a mind bent on doing that which is wrong, or, 'as it has been sometimes said, with a guilty mind.' "

In State v. Souhrada, 122 Mont. 377, at page 386, 204 Pac. (2d) 792, at page 797, this court said: "This court previously has indicated that "feloniously' implies an act which is done with a mind bent on doing wrong. State v. Rechnitz, 20 Mont. 488, 52 Pac. 264. However, *it was not necessary to use the word 'feloniously' in the information, as the offense could have been described in the language of the statute.* People v. Davenport, 13 Cal. App. 632, 110 Pac. 318; 14 Cal. Jur., sec. 43, page 57; 42 C.J.S., Indictments and Informations, section 135, page 1028; State v. Rechnitz, supra [cited above]." Emphasis supplied.

*"Fraudulent.* Based on fraud, proceeding from or characterized by fraud; tainted by fraud; done, made, or effected with a purpose or design to carry out a fraud." Black's Law Dictionary, page 814.

*"Knowingly.* * * * The use of this word in an indictment is equivalent to an averment that the defendant knew what he was about to do, and, with such knowledge, proceeded to do the act charged." Black's Law Dictionary, page 1059. Also see 51 C.J.S., page 463, notes 30-36.

In United States v. Schneiderman, D.C. Cal., 102 F. Supp. 87, 93, it is said that to act "knowingly" means to act volun-

tarily and purposely and not because of mistake or inadvertence or other innocent reason.

A false pretense may consist in any act, word, symbol or token calculated and intended to deceive. It may be made either expressly or by implication. The form of the words in which the pretense is couched is immaterial. People v. Mace, 71 Cal. App. 10, at page 21, 234 Pac. 841, at page 845.

In connection with false pretenses, actions may speak as fully as words, Martins v. State, 17 Wyo. 319, 98 Pac. 709, 22 L.R.A., N.S., 645, and it is not necessary that a false pretense be made by verbal representation, since acts or conduct without words may be sufficient. Smith v. State, 74 Fla. 594, 77 So. 274; Hammer v. State, 173 Ind. 199, 89 N.E. 850, 24 L.R.A., N.S., 795, 140 Am. St. Rep. 248; Commonwealth v. Drew, 19 Pick. 179, 36 Mass. 179; State v. Hargrave, 103 N.C. 328, 9 S.E. 406; Commonwealth v. Wallace, 114 Pa. 405, 6 A. 685, 60 Am. Rep. 353. For example one may be guilty of obtaining property by false pretenses by ''salting'' with gold ore a test hole in placer mining ground and thereby deceiving a purchaser of the property. Martinez v. State, 20 Ariz. 29, 176 Pac. 582.

In the Hanks case, supra, this court also quoted with approval from Kelly v. State, 59 Nev. 190, 89 Pac. (2d) 1, wherein the Supreme Court of Nevada said: '' 'The information should not be required to allege more elements in charging a crime than the statute defining the crime requires.' ''

In State v. Foot, 100 Mont. 33, at page 45, 48 Pac. (2d) 1113, at page 1118, this court said: ''It is generally held that it is unnecessary for the information to allege the very words of the pretense or whether the pretense was spoken or written. [Citing authorities.] The information was sufficient.''

In People v. Helmer, 154 N.Y. 596, at pages 599, 601, 49 N.E. 249, at page 250, the Court of Appeals of the State of New York in upholding the sufficiency of an indictment, said:

''The indictment was based upon the provisions of section 592 of the Penal Code, which, so far as material, provide that an officer of a corporation, who knowingly exhibits a false book

to any public officer authorized by law to investigate its affairs, with intent to deceive such officer in respect thereto, is punishable by imprisonment not to exceed 10 years. * * * The indictment, in effect, charged that the defendant, as president and director of the Merchants' Bank of Lockport, at the time named, feloniously, willfully, wrongfully, and knowingly presented, exposed, and exhibited its cash book or tickler to B. S. W. Clark, a public officer duly authorized and commissioned to investigate the affairs of that bank, with intent to deceive such public officer, contrary to the form of the statute in such case made and provided. The only omission claimed is of the words 'in respect thereto.' While it may be that, under the strict and technical rules of the common law, this indictment might be regarded as defective, yet, under the liberal procedure established by our statutes we think that it was sufficient. Under the present practice, an indictment is sufficient if the act or omission charged as a crime is plainly and concisely set forth with such a degree of certainty as to enable the court to pronounce judgment according to the right of the case, and no indictment is insufficient by reason of any imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits. Nor does any error or mistake therein render it invalid, unless it actually prejudices, or tends to prejudice, the defendant in respect to a substantial right. Code Cr. Proc. sections 284, 285, 684. The purpose of an indictment is to identify the charge against a defendant so that his conviction or acquittal may inure to his subsequent protection, and to apprise him of the nature and character of the offense charged, and of the facts which may be proved, so as to enable him to prepare his defense. When tested by these principles, it is obvious that the indictment was sufficient, as there was no defect which affected any substantial right of the defendant. It fairly apprised him of the facts to be proved against him, and so clearly identified the crime charged that a judgment would protect him from a sub-

sequent conviction. Hence, we are of the opinion that the defendant's exception to this ruling was not well taken.''

In State v. Baxley, 40 Okl. Cr. 361, 269 Pac. 326, the Criminal Court of Appeals of Oklahoma held that an information for obtaining money by a false and bogus check was not insufficient because of failure to allege in what way the check was false and bogus.

Alabama like Montana is a Code state. Title 14, section 209 of the Alabama Code, 1940, provides: ''Any person, who, by false pretense or token, and with the intent to injure or defraud, obtains from another any money or other personal property, shall on conviction, be punished, as if he had stolen it.''

To sufficiently charge the offense so denounced by Title 14, section 209, supra, the Alabama Code provides a model form of indictment which merely charges that, ''A. B. did falsely pretend to C. D., with intent to defraud, that he had ten bales of cotton packed and ready for delivery, and, by means of such false pretense, obtained from the said C. D. one hundred dollars (or ten pieces of cloth, as the case may be).'' Title 15, section 259, subd. 60, Code of Alabama. Compare this short, simple but clearly sufficient statement with the lengthy, detailed, particularized statement set forth in the information on which the defendant Hale was tried and convicted.

Ordinarily the language employed by the Legislature in defining a crime is deemed to be best suited to that purpose, and error cannot be predicated upon its use in informations and instructions. People v. Anderson, 58 Cal. App. 267, at page 271, 208 Pac. 324, at page 326.

Not only does the information follow the language of the statute, section 94-1805, but it goes far beyond and sets forth in *haec verba* the state's most important evidence, being the *false claim* and the *county warrant* issued in payment thereof by means of which two documents it is charged that the defendant obtained $600.79 from the county treasurer by the false representations and pretenses therein made and, by the county treasurer, believed to be true.

It is well settled law that in charging a criminal offense created by statute, the offense may be charged in the language of the statute and that this is sufficient. Evidentiary facts need not be alleged. People v. Steel, 35 Cal. App. Supp. (2d) 748, at page 751, 92 Pac. (2d) 815, at page 817. Also see State v. Shannon, supra; State v. Stickney, supra; State v. Brown, supra; State v. Lake, 99 Mont. 128, 136, 43 Pac. (2d) 627 and State v. Wong Sun, 114 Mont. 185, 191, 192, 133 Pac. (2d) 761.

"An informtaion is sufficient if it follows the language of the statute, and alleges all the acts and facts which the Legislature has said shall constitute the offense, and is direct and certain as to the party to be charged and the particular offense charged." Poeple v. Green, 65 Cal. App. 234, 223 Pac. 1004, at page 1006.

As before shown section 94-101 provides the rule of construction for penal statutes while section 94-6410 provides how the words used in an information are to be construed.

*Statutory Sufficiency Tests.* Section 94-6412 provides the only tests by which the sufficiency of this information is or may be determined. So far as is here pertinent said section of the Penal Code reads:

"94-6412. (11852) *Indictment or information, when sufficient.* The * * * information is sufficient if it can be understood therefrom—

"1. That it is entitled in a court having authority to receive it * * *

"2. If an * * * information, that it was subscribed and presented to the court by the county attorney of the county in which the court was held;

"3. That the defendant is named * * *

"4. That the offense was committed at some place within the jurisdiction of the court * * *

"5. That the offense was committed at some time prior to the time of * * * filing of the information:

"6. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language,

without repetition, and in such manner as to enable a person of common understanding to know what is intended;

"7. That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case."

*Subsection 1 Test.* The information fully meets the test and requirement of subsection 1 of section 94-6412.

It is entitled: "In The District Court Of The Fourth Judicial District Of The State Of Montana, In and For The County Of Missoula" being a court having authority to receive it.

*Subsection 2 Tests.* The information fully meets the tests and requirements of subsection 2 of section 94-6412. (1) It was subscribed: "Wesley Castles County Attorney in and for the County of Missoula, Montana" and (2) on March 23, 1951, it was by him presented and filed in the district court of Missoula County being the county wherein the court was held.

· *Subsection 3 Test.* The information fully meets the test and requirement of subsection 3 of section 94-6412. It is entitled: "State Of Montana, Plaintiff vs. R. J. Hale, Defendant." and it states that, "R. J. Hale is accused by Wesley Castles, County Attorney in and for the County of Missoula, by this Information, of the crime of Obtaining Money By False Pretenses, a felony."

*Subsection 4 Test.* The information fully meets the test and requirement of subsection 4 of section 94-6412. It states that the offense of obtaining money by false pretenses was committed by the defendant R. J. Hale "at the County of Missoula, State of Montana."

*Subsection 5 Test.* The information fully meets the test and requirement of subsection 5 of section 94-6412. It states that the offense so charged was committed "on or about the 16th day of November, A.D. 1950, and before the filing of this Information," which filing occurred on March 23, 1951.

*Subsection 6 Test.* The information fully meets the test and

requirement of subsection 6 of section 94-6412. The acts charged are clearly and distinctly set forth in ordinary and concise language, without repetition, and in such manner as to enable the defendant Hale and any other person of common understanding to know what is intended, the defendant being accused of having committed the "crime of Obtaining Money By False Pretenses, a felony, committed as follows, to-wit:

"That at the County of Missoula, State of Montana, on or about the 16th day of November, A.D. 1950 * * * the said defendant then and there being, did then and there *feloniously, knowingly and designedly, and with intent to defraud* Missoula county * * * obtain from the said Missoula County the amount of * * ($600.79) by presenting for allowance to the Missoula County Airport Board a false and fraudulent claim [said claim, in its entirety, being pleaded and at this point incorporated and set forth in the information] and that pursuant to approval by the Missoula County Airport Board, a warrant was drawn upon the County Treasurer of Missoula County, and the said County Treasurer believing the representations upon the warrant to be true, paid a Missoula County Warrant in words and figures following: [said warrant, in its entirety, being pleaded and at this point incorporated and set forth in the information].

"That the said Warrant was received by the defendant and deposited by the defendant at the Western Montana National Bank of Missoula, Montana and he, the said defendant received therefor credit in the sum of * * * ($600.79) lawful money of the United States, all contrary to the * * * statute in such case made and provided * * *" Emphasis supplied.

Section 94-6414 provides: "Neither presumptions of law, nor matters of which judicial notice is taken, need by stated in an indictment or information."

Thus the statement that the defendant Hale committed the acts complained of "contrary to the form, force and effect of the statute in such case made and provided" is the equivalent of stating that defendant's said acts and conduct were contrary to and violative of the provisions of sections 25-201, 94-

484

3908 and 94-1805 of the Revised Codes of Montana of 1947, whereof judicial notice is taken. See sections 93-501-1, subd. 2, 93-2501-2, 94-7209 and 94-6414.

*Subdivision 7 Test.* Finally the information fully meets the final test and requirement of subsection 7 of section 94-6412. The acts and conduct charged as the offense of obtaining money by false pretenses were and are stated with such a degree of certainty as to enable the district court of Missoula County to pronounce judgment upon each conviction, according to the right of the case and the trial court has twice so pronounced judgment in this case following convictions by jury verdicts.

The last judgment so pronounced and entered in the trial court, omitting therefrom the title of the court and cause, is as follows:

"Judgment

"The above entitled cause came on regularly before the Court on the 23rd day of March, 1951, upon the application of Wesley Castles, County Attorney for Missoula County, State of Montana, for leave to file an information accusing R. J. Hale, defendant above named, of the crime of obtaining money by false pretenses, a felony,

"Whereupon, leave to file the information having been granted, and the defendant being informed of all his legal rights, he was duly arraigned, answered to his true name and acknowledged receipt of a true copy of the information.

"Thereafter, on March 26, 1951, the defendant being present in court with his counsel entered his plea that he is 'not guilty' as charged in the information. The case having been regularly set for trial, and a trial by jury having been had, the defendant was found 'guilty' as charged in the information and his punishment left to be fixed by the Court, and the Court having heard the testimony and being fully advised in the premises, sentenced the said defendant to three years at hard labor in the Montana State Penitentiary at Deer Lodge, Montana.

"Thereafter said case was appealed to the Supreme Court of the State of Montana, and the defendant granted a new trial.

"On March 16, 1953 defendant's demurrer to the information was submitted to the Court, by the Court overruled, and the defendant entered his plea that he is 'not guilty' as charged in the information. and the case was regularly set for trial.

"Said cause came on regularly for trial on March 23, 1953, and a jury having been drawn and sworn to try the case, on March 26, 1953 found the defendant 'guilty' as charged and left his punishment to be fixed by the Court. On March 30, 1953, the Court sentenced the defendant as follows:

"It Is The Judgment Of The Court that R. J. Hale be, and he is hereby sentenced to a term of three years at hard labor in the Montana State Penitentiary at Deer Lodge, Montana.

"Dated this 1st day of April 1953.

"Albert Besancon, Judge"

Both section 94-1805 and section 94-3908 denounce and provide punishment for the perpetration of certain frauds, section 94-1805 of the Penal Code being a part of Chapter 18 entitled "False Personation and Cheats" and section 94-3908 of the Penal Code being a part of Chapter 39, entitled "Public Officers—Offenses By."

Fraud is perpetrated by innumerable methods and means.

Judges and lawyers boast that there is no definition of fraud. They think this is in aid of the law's effectiveness and does not weaken it. Its very vagueness is said to be a source of strength, for it renders the law more adaptable to unpredictable conditions.

It is quite obvious that the Legislature contemplated that public prosecutors, in drafting indictments and informations, ordinarily would resort to and employ the words so used by the Legislature in the various statutes such as sections 94-1805 and 94-3908, describing or defining the various crimes. Likewise it is quite apparent that the Legislature also contemplated that at times the public prosecutors would probably employ other words conveying the same or similar meaning for which contingencies the Legislature expressly provided.

Section 94-6411 provides: "Words used in a statute to de-

fine a public offense need not be strictly pursued in the indictment or information, but other words conveying the same meaning may be used.''

*No Prejudice.* That defendant suffered no actual prejudice on his second trial by reason of not being sufficiently informed as to what was intended or as to the offense with which he was charged so as to enable him to prepare his defense is shown by defendant's own testimony at his most recent trial.

On direct examination by his own counsel, Hale was interrogated and made answer as follows:

''Q. How much were you paid for the work for preparing the plans? A. $600. That includes the supervision of the work, also.

''Q. Referring now to State's Exhibit 6, will you tell me what that is? A. That's the claim.

''Q. Was that the claim upon which you were paid the $600 for the plans and specifications? A. Yes, sir.

''Q. I notice that you signed 'Montana Engineering Company H. B. Waite, Secretary.' You signed that? A. I did.

''Q. Will you tell the jury how you happend to sign 'Montana Engineering Company H. B. Waite, Secretary' on that claim? A. I have used the name Montana Engineering Company for years. I never heard it called fictitious until I came here. I have always believed that you gain more prestige from having a company than as an individual. * * *

''Q. I refer you now to State's Exhibit 7. What is it? A. A warrant for $600, for that claim.

''Q. Was that the warrant paid to you? A. Yes, sir.

''Q. Upon its receipt you deposited it in your bank account? A. Yes, sir.

''Q. Did the bank ask you to come down and guarantee the payment? A. I deposited it in the bank, and two or three days later they asked my to come over and guarantee the payment.

''Q. And you did? A. Yes.

''Q. And you got credit for it? A. Yes, sir.''

In March 1951 defendant had a conversation with the county

attorney at the latter's office in Missoula concerning which, at his most recent trial, the defendant was questioned and made answer as follows:

"Q. What was the subject of the conversation at that time? A. Mostly about this claim that we are talking about here, in that he wanted to know who the Montana Engineering Company was, and he asked me if I had signed this claim, and I told him I hadn't.

"Q. You told him you hadn't? A. Yes, I told him the Montana Engineering Company was me, but that I had not signed the claim. He questioned me a little bit more, and I admitted that I had.

"Q. Why did you tell him in the first place that you had not signed it? A. I don't know, other than the fact that I had been warned not to sign these claims."

Also in answer to further questions put to him by the county attorney at his second trial the defendant made answer as follows:

"Q. You testified that when Castles first inquired about this claim you told him, you denied signing the name H. B. Waite at first? A. That's right.

"Q. Why did you do that? A. That I don't know. * * *

"Q. Who is H. B. Waite? A. H. B. Waite is a boy that worked for me at Livingston in 1927.

"Q. He is an actual person? A. He *was* an actual person.

"Q. As far as you know, is he still an actual person? A. As far as I know. * * *

"Q. Mr. Harvey Hill, who notarized that claim, was an employee of yours? A. He was in the employ of the county.

"Q. As a matter of fact, you hired him? A. Yes.

"Q. You even bought his notarial seal, didn't you? A. No, I doubt that. What do you mean?

"Q. You know what I mean by a notarial seal? A. I don't remember that.

"Q. You don't remember whether you bought it or not? A. No, sir.

"Q. And paid his bond as a notary? A. No. I don't remember that."

· Section 94-6413 of the Penal Code provides: "No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon its merits."

Section 94-6434 provides: "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

Section 94-8207 provides: "After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties."

In the instant case the claim involved bears the approval of certain members of the Missoula County Airport Board but such approval would not have been obtained had the facts been known.

At the trial the witness Matthews, a member of the Missoula County Airport Board, testified: "Q. If you had known that the signature 'H. B. Waite, Secretary' had in fact been signed by R. J. Hale, would you have approved his claim? A. No, sir."

The witness Mueller, also a board member whose approval appears on the back of the claim, testified to the same effect. The witness Dussault, also a board member, testified that he would not have approved the claim if it were assumed that there had been a forgery of the name of H. B. Waite and had he known it.

Section 94-105 of the Penal Code provides: "Whenever, by any of the provisions of this code, an intent to defraud is required in order to constitute any offense, it is sufficient if an intent appears to defraud any person, association, or body politic or corporate, whatever."

In Johnson v. People, 110 Colo. 283, 133 Pac. (2d) 789, at page 792, the court said: "If false representations are made * * * and thereby an appearance of regularity is created such that if the matters appearing were true, the disbursement of the county's funds would be proper; and if in regular manner the officials performed the acts necessary and proper for a disbursement of county money, whether they or any of them were in fact deceived or performed the official acts requisite to such disbursement with full knowledge that the appearance of regularity was falsely and fraudulently created, the county, as a governmental agency or branch of the government, was in law deceived; and when the money was disbursed in regular course this was proof of the reliance of the county on the false and fraudulent representations that created the false appearance of regularity. * * * To state the matter briefly, if an official charged with performing an act in the claim of acts necessary to a regular disbursement of county moneys is deceived and relies upon an apparent, but falsely and fradulently created, situation of fact, the county itself, as a governmental entity, is deceived and relies upon such situation in fact; but even if all such officials are parties to the fraudulent scheme creating a false appearance of regularity and money is obtained through the regular channels of disbursement, the county, in law, is none the less deceived and none the less relies on the falsely created situation." Also see State v. Talley, 77 S.C. 99, 57 S.E. 618, 11 L.R.A., N.S., 938, 122 Am. St. Rep. 559.

In my opinion the refusal of the trial court to give, in its entirety, defendant's offered instruction No. 26 did not actually prejudice the defendant nor tend to his prejudice in respect to a substantial right, section 94-6434, nor do I find any defect or imperfection in the information that tends to the prejudice of a substantial right of the defendant upon the merits, section 94-6413.

Since judgment should be given on this appeal without regard to technical errors or imperfections which do not affect the substantial rights of the defendant, section 94-8207, the

order and the judgment from which the appeal was taken should be affirmed.

MR. JUSTICE BOTTOMLY:

I dissent.

In my opinion the information presented and filed herein by Wesley Castles, county attorney of Missoula County, was and is sufficient.

It appears to me that the majority opinion reverts to the common law to determine the sufficiency of the information filed herein by said county attorney and completely ignores the statutory law prescribed by the legislature and by which alone the court shall adjudge the sufficiency of an information and which is the only law applicable thereto. See R.C.M. 1947, sections 94-6412, 94-6403, 94-6404. Compare State v. Brown, 38 Mont. 309, 99 Pac. 954, 956, wherein Chief Justice Brantly, speaking of the above statutes and for this court, said: "In jurisdictions where there are similar statutes, the general rule is that a charge following the words of the statute is sufficient." Compare, State v. Hayes, 38 Mont. 219, 99 Pac. 434; State v. Nielson, 38 Mont. 451, 100 Pac. 229.

In State v. Lake, 99 Mont. 128, 43 Pac. (2d) 627, 629, this court in a unanimous opinion said: "Obviously, the information was drawn under the provisions of subdivision 2, section 11368, Rev. Codes 1921 [now R.C.M. 1947, section 94-2701]. The charge is that of larceny as agents, servants, and bailees, *and is in the words of the statute. The information generally follows the statute, and we think it is good.* An information which charges the offense of larceny as agent or bailee in the language of the statute is sufficient and is not vulnerable to a general demurrer. State v. Brown, 38 Mont. 309, 99 Pac. 954; People v. Riccardi, 50 Cal. App. 427, 195 Pac. 448; Connelly v. State, 93 Tex. Cr. R. 295, 248 S.W. 340. The information was sufficient, and the court was correct in overruling the demurrer." Emphasis supplied.

Another reason that I cannot agree with the majority opin-

ion is that State v. Hale, 126 Mont. 326, 249 Pac. (2d) 495, decided by this court May 27, 1952, establishel the law of this case for the district court in its retrial thereof. Such law of the case so established is binding not only on the lower court but on this court on this second appeal. Neither the district judge nor the members of this tribunal should be placed in error in following the law so established in Hale's first appeal.

The judgment of the district court should be affirmed.